1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    NABIL SAMAAN,                              No.  2:16-cv-00789-KJM-CKD

12                 Plaintiffs,

13         v.                                    ORDER

14    COUNTY OF SACRAMENTO, SCOTT
      JONES, individually and in his capacity as
15    sheriff, and DOES 1 through 10,

16                 Defendants.

17

18              Nabil Samaan, proceeding *pro se*,[1] sues Sacramento County and Sacramento

19    County Sheriff Scott Jones, alleging they violated his civil rights by wrongfully revoking his

20    permit to carry a concealed weapon.  Defendants move for summary judgment and Samaan

21    opposes.  For reasons provided below, the court GRANTS in part and DENIES in part

22    defendants' motion.

23    I.     FACTUAL AND PROCEDURAL BACKGROUND

24           A.     Factual Background

25              Plaintiff Samaan has had a contentious relationship with Sacramento County

26    officials dating back to at least 2013.  He now contends Sacramento County and Sacramento

27    _____

28    [1] Although plaintiff proceeds *pro se*, he "ha[s] been a California licensed attorney in good
      standing for over 20 years . . . ."  Samaan Decl., ECF No. 58-3 ¶ 1.

                                              1

County Sheriff Scott Jones wrongfully revoked his permit to carry a concealed weapon ("CCW permit") in retaliation for his protected activities arising from prior disputes with County officials. For purposes of this motion, the following facts are construed in a light most favorable to Samaan.[2]

### 1. Samaan's Prior Disputes with the County

#### a. Samaan's 2013 Emails to the County Complaining of Unfair Treatment

In 2013, Samaan exchanged emails with County code enforcement officials concerning enforcement actions taken on Samaan's Sacramento County properties. *See* Defs.' Ex. I, ECF No. 52-5 at 74-83[3] ("2013 emails"). In those emails, Samaan complains of discriminatory treatment, claiming the County was mistreating him because of his race. *See, e.g.*, *id.* at 82 (Nov. 11, 2013 email complaining "county has done nothing to the neighbor that built all kinds of structures with county consent (bribes)? Or at least the county turned a blind eye while driving up to harass the [N-word] boy"); *id.* at 74 (Nov. 16, 2013 email stating, "I am in shock that the county whined and complained about my project all the while ignoring the white establishment neighbor who has damned [*sic*] up the creek, placed significant electrical infrastructure in the ravine, including a deck and significant filtering pumping facilities"); *id.* (Nov. 15, 2013 email, "Why the hell do you treat [N-word] boy differently than everyone else?"). Samaan explains he uses the N-word to "refer[] to himself, as he is African-American/Egyptian." Reply, ECF No. 36 at 3.

#### b. The Sailor Bar Park Lawsuit

In February 2014, Samaan filed a civil lawsuit against Sacramento County ("the Sailor Bar suit"). UMF 30; ECF No. 35-5 at 22-45 (complaint). He alleged the County was

---

[2] Defendants filed a statement of undisputed facts. *See* ECF No. 56. Samaan neither filed an alternative statement of facts nor responded to defendants' statement of facts. The court refers to each listed fact as undisputed unless plaintiff's cited exhibits raise a genuine material dispute, or his brief points to such a dispute.

[3] Because the parties' exhibits are not individually paginated, the court cites ECF page numbers when identifying exhibits.

improperly using the American River Parkway to store toxic materials.  *See generally* ECF No. 35-5 at 22-45.  The court dismissed the Sailor Bar suit a year later.  UMF 31.  Despite the dismissal, Samaan contends the Sailor Bar suit "forced Sacramento County to clean up the toxic and other harmful materials at Sailor Bar Park and to stop using it as a dumping ground," an obligation that, according to Samaan, has cost the County approximately $5,000,000 to date.  Samaan Decl. ¶ 19.

                c.       <u>Samaan's Email to Mark Rains and the Sheriff Department's Threat Assessment</u>

        In February 2016, Samaan exchanged emails with Mark Rains, a Sacramento County Water Resources Department civil engineer, about ongoing work on Samaan's property.  *See* Defs.' RJN, ECF No. 52-3 at 10-16; UMF 37.[4]  On February 9, 2016, Samaan sent Rains an email stating, in part, "I don't need people at the county threatening . . . . let's not put Mark on the my [*sic*] crap list.  [¶]  I would suggest you speak about me in the highest regard or this will go south pretty quickly.  [¶]  I have no patience for any crap.  We clear?"  Defs.' RJN at 10.  One week later, Rains forwarded Samaan's email to Mike Landy, stating, "For the record, I believe this person could be a threat to County personnel."  UMF 39.  Landy, a Senior Safety Specialist for the County's Water Resources Department, then asked Rosemarie Codog, a County Sherriff's deputy and workplace violence coordinator, to "review the emails and provide an opinion."  UMF 40-42; Defs.' Ex. J, Landy Dep., ECF No. 52-5 at 90.  After conducting a violence risk assessment of Samaan, UMF 42, Codog concluded there was no evidence of potential violence, but there was evidence that Samaan intentionally inflicted emotional distress on County employees.  Samaan Ex. 3, Codog Depo., ECF No. 58-4 at 12.  Codog is not involved in the CCW permitting process at the Sheriff's Department.  UMF 43.

---

[4] Both parties ask the court to judicially notice documents from the case of *Nabil Samaan v. Mark Rains*, Sacramento County Superior Court Case No. 34-2016-00195759 ("State Court Defamation Case").  Defendants ask the court to judicially notice Rains' declaration and exhibits, ECF No. 52-2; Samaan asks the court to judicially notice the order denying Rains' summary judgment motion, ECF No. 58-2.  Neither party objects to the opposing party's request.  The court GRANTS both unopposed requests.  Fed. R. Evid. 201 (court may take judicial notice of facts not subject to reasonable dispute and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

2.     Samaan's CCW Permit Application, Issuance, Revocation and Appeal

In October 2015, Samaan applied for a CCW permit.  UMF 1, 10.  A three-person County CCW panel, consisting of Chief Deputy David Torgerson, Captain Michael Goold and Captain Kris Palmer, reviewed and tentatively approved Samaan's application, UMF 11, and his CCW permit was officially issued on February 22, 2016, UMF 13.

After Samaan obtained his CCW permit, Anthony Bennett, Head Ranger of Sacramento County Regional Parks, informed Samaan that a local ordinance prohibited him from carrying weapons in the American River Parkway.  Samaan Decl., ¶ 4; Samaan Ex. 11, ECF No. 58-5 at 20.  Samaan and his firearms instructor disagreed, concluding "State laws supercede [*sic*] [the] county [ordinance]" and authorize carrying a weapon in the Parkway with a CCW.  Samaan Ex. 12 at 27-29.

On March 1 and March 2, 2016, Samaan and Bennett exchanged several emails on the issue.  *Id.* at 20-26.  Samaan requested that Bennett ask "county counsel to give [Samaan] an opinion" on whether state law supersedes the Ordinance.  *Id.* at 26.  Bennett refused, arguing Samaan was "mistaken," "local ordinances have been upheld" and if Samaan "violate[s] the county and state code, [he] will be prosecuted." *Id.* at 25-26.  The exchange concluded with Bennett stating, "We will be enforcing the ordinance as it is written.. [*sic*] This is not the forum to debate the issue[,]" and Samaan responding, "Very well.  I am not sure whee [*sic*] the right forum is short of having a false arrest." *Id.* at 23.  Also on March 2, Samaan emailed Sacramento County Senior Sheriff's Records Specialist, Amber Wong, asking whether his CCW permit allowed him to carry a firearm on the American River Parkway.  UMF 14; Defs.' Ex. F, Wong Decl., ECF No. 52-5 at 22 ¶¶ 1-4; Defs.' Ex. A, ECF No. 52-5 at 3.  Wong recommended either not carrying or seeking legal advice.  Defs.' Ex. A at 2.

On March 4, 2016, Samaan sent an email to the Sacramento County Sheriff's Department entitled "CCW and the American River Parkway."  Samaan Ex. 13, ECF No. 58-5 at 31 ("the March 4 email").  In the email, Samaan opined that the Ordinance "mak[es] it a criminal

/////

/////

offense to abide by State law," "is ambiguous and incomplete," and does not account for CCW

permit holders.  *Id.*  Samaan then stated:

> So on advice of counsel, I will carry while on my horse in the parkway when not on Patrol,[5] pursuant to State Law, the rights bestowed upon me by my CCW permit, and the Second Amendment.
>
> This is email [*sic*] is putting the Board of Supervisors, and the Park Rangers on notice that any infringement of mv rights will be cause for the filing of an Unlawful Arrest and/or detainment.
>
> With all due respect I would ask that if I am detained that my horse be treated humanely and promptly returned to my ranch, the location is know [*sic*] to the Park district.
>
> I look forward to hearing from the Board of Supervisors, the Park Rangers, County Counsel and any other law enforcement officials.

*Id.*

On March 8, Sheriff's Deputy Elaine Stoops, emailing from the Sheriff's CCW email account, forwarded Samaan's March 4 email to the three-person panel that had tentatively approved Samaan's CCW application, copying County Chief Deputy Phil Brelje and Sergeant Alex McCamy, among others not identified in the parties' briefing.  Defs.' Ex. B, ECF No. 52-5 at 6 (email stating in part, "[p]lease review [Samaan's] emailed letter and advise how you would like us to proceed").  Brelje responded that he and McCamy "talked about this yesterday" and were likely "headed toward revoking his CCW and we should have a definitive answer later today."  *Id.*

Wong responded from the Sheriff's CCW email account roughly twenty minutes later: "There's actually already a meeting set up for the 15th in regards to him and how things should be handled..[*sic*] Apparently he's got parks all stressed..[*sic*]"  *Id.* at 5; *see* Defs.' Ex. D, Palmer Decl. ¶ 11 (noting March 8, 2016 email was sent by Wong).  Wong's email included an earlier email from Landy stating in full:

> All; [*sic*] the purpose of this meeting is to share factual information regarding interactions and communications with Mr. Samaan.

---

[5] Samaan has been a member of the Sacramento County Mounted Patrol for several years and recently became President of that organization.  Samaan Decl. ¶ 11.  According to Bennett, the Mounted Patrol is a "volunteer horse patrol."  Bennet Depo. Excerpts, ECF No. 58-5 at 53.

Desired outcomes include:

- Obtaining factual information from affected departments/staff

- Determining if any issue(s) rise to the level of Work Place Violence

- Identifying appropriate strategies for interacting with Mr. Samaan and other challenging customers

- Determine if the county should draft a letter informing Mr. Samaan of what is acceptable or not acceptable in dealing with departemental [*sic*] staff

Rose Codog and County Counsel are being asked to attend and offer opinions on appropriate actions any formal communications or recommendations.

If you cannot attend, please send a staff person who has received communications from and/or interacted with Mr. Samaan and/or his representatives or is knowledgeable on this topic.

Defs.' Ex. B at 5.

On an unspecified date, the CCW panel determined Samaan's CCW permit should be revoked, though the panel members do not clearly recall whether they made a final determination or merely recommended revocation. SUF 20, 22. The panel members attribute their revocation decision solely to Samaan's March 4 email stating he would violate the Ordinance by carrying a weapon in the American River Parkway. Defs.' Ex. D, Palmer Decl., ECF No. 52-5 at 12-15 ¶¶ 9-20; Defs.' Ex. E, Goold Decl., ECF No. 52-5 at 17-20 ¶¶ 10-21; Defs.' Ex. H, Torgerson Depo., ECF No. 52-5 at 42-49.

On March 15, 2016, Samaan's 2013 emails complaining of discriminatory County code enforcement were forwarded from Wong to McCamy, from McCamy to Brelje, and, finally, at 2:46 p.m., from Brelje to Jones. *See* Wong Decl. ¶ 7; Defs.' Ex. I, Brelje Depo. & Exs., Ex. 1, ECF No. 52-5 at 72. Brelje's March 15, 2016 email to Jones, sent at 2:46 p.m., stated in full:

/////

/////

Sheriff,

> For your further consideration………[*sic*] Here are a lengthy series of emails from Mr. Samaan dating back to 2013 and he uses the "N" word and talks about the white establishment among other threatening language[.]

Brelje Depo Ex. 1 at 72.  At 3:02 p.m., Jones replied, "Who is this guy?" *Id.* Brelje responded one minute later, "This is the guy on the CCW and the parkway issue." *Id.* at 73.  At 3:48 p.m., Jones responded, "Thanks. Revoke it. Document it all." *Id.*  Jones declares that his decision to revoke Samaan's CCW permit was based only on "Samaan's threat to use his CCW to violate the law," which was a public safety concern and indicative of Samaan's questionable moral character. Jones Decl., ECF No. 35-3 ¶ 10; Defs.' Ex. G, ECF No. 52-5 at 30-34.

The Sheriff's Department sent Samaan a March 23, 2016 letter notifying him that his CCW permit was revoked because "[t]he Sheriff concludes you are no longer a qualified candidate to possess a Carrying Concealed Weapons permit with this agency."  UMF 28-29; ECF No. 27 at 46-47.  Samaan appealed the revocation.  Samaan Ex. 2, ECF No. 58-4 at 4-5.  Brelje affirmed the revocation on appeal, based on "the whole totality of the circumstances," which included Samaan's March 4 email and Rains' email stating Samaan may be a threat to County personnel.  Samaan Ex. 9, ECF No. 58-5 at 7-8.

B.     Procedural Background

Samaan sued the County and Jones on April 18, 2016, alleging Second Amendment and equal protection violations under 42 U.S.C. § 1983.  ECF No. 1 at 9-10.  The court granted defendants' motion for judgment on the pleadings with prejudice as to Samaan's Second Amendment claim and without prejudice as to his Fourteenth Amendment claim.  ECF No. 15 (motion hearing mins.).  Samaan then filed his operative complaint, alleging equal protection and First Amendment claims.  First Am. Compl. ("FAC"), ECF No. 17; *see* MSJ Order, ECF No. 45 at 3 (noting amended complaint appears to assert both equal protection and First Amendment claims).  Samaan seeks only injunctive relief.  FAC Prayer.

Samaan moved for summary judgment on both of his claims, ECF No. 27, which the court denied.  *See* MSJ Order.  As to his First Amendment retaliation claim, Samaan at the

time identified as protected activity only his "emails to the County regarding discriminatory and disparate treatment, and filing the [Sailor Bar] lawsuit." ECF No. 27 at 9. At hearing on his motion, Samaan confirmed he was not pursuing a due process claim. *See* MSJ Order, ECF No. 45 at 3. The court denied Samaan's motion. The court also denied his subsequent motion for leave to amend. ECF No. 46 (motion); ECF No. 57 (order).

Defendants have now moved for summary judgment on Samaan's claims. Mot., ECF No. 52. Samaan opposed, Opp'n, ECF No. 58, and defendants filed a reply, Reply, ECF No. 59. The court submitted the motion after hearing and resolves it here.

## II.   LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[6]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "[o]nly disputes over facts that might affect the outcome of the

/////

---

[6] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

District courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This may be the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

III.   DISCUSSION

A.   Sheriff Jones as State Actor

The County contends that Sheriff Jones acts as an agent of the state, not the County, when he grants, denies, or revokes a CCW permit; therefore the County is not a "person" under 42 U.S.C. § 1983.[7] Mot. at 11. The court agrees.

---

[7] 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or

1          Whether Jones is a state or local actor for § 1983 purposes depends on whether he

2  is the County's final policymaker on CCW permitting, which turns on his "actual function" under

3  state law.  *See McMillian v. Monroe County*, 520 U.S. 781, 785-86 (1997) (establishing

4  framework for determining whether county officer is a state actor for purposes of § 1983).

5  Although "instructive[,] . . . state law does not control [] interpretation of a federal statute."  *Streit*

6  *v. Cty. of Los Angeles*, 236 F.3d 552, 560 (9th Cir. 2001); *compare Brewster v. Shasta County*,

7  275 F.3d 803 (9th Cir. 2001) (finding California sheriffs act as representatives of county in

8  investigating crimes)*, with Venegas v. County of Los Angeles*, 32 Cal. 4th 820 (2004) (finding

9  California sheriffs act as representatives of the state in investigating crimes)*, and Jackson v.*

10  *Barnes*, 749 F.3d 755, 765 (9th Cir. 2014) (holding *Vengas* did not "displace" *Brewster* because

11  "the proper balance of the[] various provisions is a question of federal law") .

12          This court is not the first to consider whether a California sheriff is an agent of the

13  state or county in the CCW licensing arena.  In *Scocca v. Smith*, the district court applied the

14  *McMillian* framework in an equal protection challenge to a Sheriff's issuance of CCW permits

15  and determined that the county was "not an appropriate defendant" because "[the] Sheriff [],

16  when making her decisions on granting or denying CCW licenses, acts as a representative of the

17  state of California, and not of the County."  912 F. Supp. 2d 875, 879-84 (N.D. Cal. 2012); *see*

18  *also Birdt v. San Bernardino Sheriffs Dep't*, No. EDCV1300673VAPJEM, 2016 WL 8735630, at

19  *2 (C.D. Cal. Aug. 8, 2016), *report and recommendation adopted*, No. EDCV1300673VAPJEM,

20  2016 WL 8738129 (C.D. Cal. Sept. 9, 2016) ("The Sheriff's Department acts on a statewide, not

21  countywide, basis in administering concealed weapon permits under California's statutory

22  scheme.").

23          In *Scocca*, the court found "most instructive . . . the provisions in the California

24  Penal Code that deal with CCW licensing."  912 F. Supp. 2d at 882.  Those provisions do not

25  permit counties to "exercise[] control or oversight over CCW licensing[,]" but instead "clearly

26  delineate a role for the state with respect to administration and oversight."  *Id.* at 882-83; *see* Cal.

27                             omission taken in such officer's judicial capacity, injunctive relief

28                             shall be not granted unless a declaratory decree was violated or
declaratory relief was unavailable.

Pen. Code § 26175(a)(3)(A) (requiring California Attorney General to develop CCW license to be used throughout California); *id.* § 26185(a)(1) (requiring California Department of Justice to prescribe forms for fingerprinting applications and requiring counties to forward two copies of each applicant's fingerprints to Department of Justice); *id.* § 26225(b)(1)-(5) (requiring copies of denial of a license or amendment to a license, issuance of or amendment of license or revocation of license to "be filed immediately by the issuing officer or authority with the Department of Justice"); *id.* § 26195(a)-(b)(1) (respectively prohibiting issuance and requiring revocation of CCW permit when California Department of Justice determines applicant is prohibited from possessing, receiving or owing firearm under state or federal law). Further, although subject to exceptions inapplicable here, under "the CCW licensing scheme[,] . . . the sheriff has the power to grant a license which conveys a right exercisable throughout the state and thus has a statewide effect." *Scocca*, 912 F. Supp. 2d at 883. Accordingly, absent a "'sufficiently complete' delegation of local police power from the state to the sheriff 'such that a suit for abuse of that power is not a suit against the State,'" the *Scocca* court construed the claim against the Sheriff in her official capacity as a claim against the state, not the county. *Id.* at 883-84 (quoting *Streit*, 236 F.3d at 563) (emphasis omitted).

Having considered the California statutory scheme governing the CCW permitting process, this court agrees with the *Scocca* court's sound reasoning and conclusion. Samaan provides no cogent argument to the contrary. *See* Opp'n at 20-21 (arguing Jones is a County actor "under the facts of this case" and applying municipal liability factors). The court GRANTS judgment for the County on all claims. As a result, Jones is the sole remaining defendant. Because Samaan seeks only injunctive relief, Jones is not entitled to sovereign immunity for claims brought against him in his official capacity as a state actor. *See Ex Parte Young*, 209 U.S. 123 (1908) (state official sued in his or her official capacity for injunctive relief is "person" under § 1983, and action not treated as action against state); *see also Wolfe v. Strankman*, 392 F.3d 358, 365 (9th Cir. 2004).

/////

/////

B.       First Amendment Retaliation Claim

"A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (citing *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)). To establish a First Amendment retaliation claim, a plaintiff must show (1) he engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct, meaning there was a nexus between the defendant's actions and an intent to chill speech. *Id.* (citations omitted).

Jones argues he is entitled to summary judgment because Samaan raises no triable issue of material fact on the third element, as he has produced no evidence of a nexus between his actions and an intent to chill speech. Mot. at 12-14. To establish the required causal relationship, a plaintiff may rely on both direct and circumstantial evidence. *Ariz. Students' Ass'n*, 824 F.3d at 870 (citing *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002)). The court uses three factors to guide its analysis here: (1) the proximity in time between the protected conduct and the alleged retaliatory conduct; (2) whether the alleged retaliatory actor expressed opposition to the protected activity; and (3) evidence that the proffered explanation for the allegedly retaliatory conduct is false and pretextual. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003); *see Addison v. City of Baker City*, 258 F. Supp. 3d 1207, 1223 (D. Or. 2017).

For example, in *CarePartners, LLC v. Lashway*, plaintiffs alleged state departments revoked their licenses to operate elderly living facilities in retaliation for plaintiffs' publicly criticizing, lobbying against and appealing state regulations and regulatory decisions. 545 F.3d 867, 871-72 (2008). The Ninth Circuit affirmed the district court's denial of defendant's motion for summary judgment based on qualified immunity. Noting only "limited discovery" had been conducted, the court found three pieces of evidence created triable issues as to whether plaintiff's protected activity motivated defendants' conduct. *See id.* at 878. First, the timing of defendant's investigation, suspension, and license revocations was "suspiciously close

1   in time to" plaintiff's lobbying efforts and administrative hearing on defendant's conduct. *Id.*

2   Second, the record included defendants' statements that they were "quickly losing patience" with

3   plaintiff, and that plaintiff was "known to defendant," supporting the existence of a retaliatory

4   intent. *Id.* Finally, one defendant's emails suggested defendants were planning to take action

5   against plaintiff before conducting follow-up inspections and other evidence suggested

6   defendants refused to meet with plaintiff to allow him to comply with regulations. *Id.*

7          Similarly, in *Gasco*, plaintiffs alleged defendants, Stanislaus County, its Air

8   Pollution Control District and several Air Pollution Control officers, suspended plaintiffs'

9   petroleum bulk plant permits and discouraged customers from doing business with plaintiffs in

10  retaliation for plaintiffs' public criticism of and ongoing legal challenge to defendants' proposed

11  regulations. *Sorranno's Gasco, Inc. v. Morgan* ("*Gasco*"), 874 F.2d 1310, 1312 (9th Cir. 1989).

12  Reversing the district court's grant of summary judgment, the Ninth Circuit cited evidence that

13  created triable issues of material fact. First, plaintiff's deposition testimony "described a

14  telephone conversation between himself and [a] defendant [] in which [the defendant] allegedly

15  intimated that he would 'somehow get even' with [plaintiff] for embarrassing him by generating

16  publicity over the [regulations]." *Id.* at 1315–16. Second, the court noted evidence suggesting

17  defendants acted prematurely: Defendants "could have requested updated information . . . , or

18  initiated revocation proceedings," but instead they "summarily suspend[ed] the [] permits" and

19  notified plaintiffs' customers of the suspension the same day plaintiffs were scheduled to supply

20  the defendants' requested information. This, the court concluded "arguably suggest[ed] a desire

21  to maximize the harm inflicted upon [plaintiff], rather than concern with receiving the requested

22  information." *Id.* at 1316.

23         Here, Samaan contends defendants revoked his CCW permit in retaliation for his

24  (1) bringing the Sailor Bar suit, (2) complaining about the County's discriminatory treatment in

25  his 2013 emails and (3) contesting the validity of the Ordinance in his March 4 email. As

26  explained below, the court finds triable issues as to (2), but not as to (1) or (3).

27  /////

28  /////

13

1          1.     Sailor Bar Suit

2          Samaan cannot establish his CCW permit was revoked in retaliation for his Sailor

3   Bar Suit.  Samaan raises only vague, unsupported arguments to the contrary.  *See, e.g.*, Opp'n at 8

4   (arguing defendants "were already disgruntled with Plaintiff's prior lawsuits[8] and other

5   challenges he has brought against Sacramento County and its personnel"); *see also id.* at 10

6   (defendants "retaliate[d] against Plaintiff for his prior lawsuits").

7          Evidence before the court contradicts Samaan's bare assertions and nothing in the

8   record would permit a reasonable juror to conclude that the retaliatory intent element is satisfied.

9   The Sailor Bar Suit was filed more than two years and dismissed more than one year before

10  Samaan's CCW permit was issued.  ECF No. 35-5 at 22 (Sailor Bar complaint file-stamped Feb.

11  4, 2014); ECF No. 35-5 at 47-48 (Sailor Bar tentative ruling dismissing case dated Feb. 6, 2015);

12  UMF 31 (Sailor Bar suit dismissed Feb. 6, 2015); UMF 13 (Samaan's CCW permit issued Feb.

13  22, 2016); *see Coszalter*, 320 F.3d at 977 (noting proximity in time between protected activity

14  and retaliatory conduct support inference of intent).  No individual named in the Sailor Bar Suit

15  was involved in the CCW issuance or revocation at issue here.  *See* ECF No. 35-5 at 22.  In fact,

16  there is no evidence any person involved in the CCW process was aware of the Sailor Bar Suit

17  throughout the entire CCW process, much less that any person expressed opposition to the suit.

18  *See* Goold Decl. ¶ 13; Palmer Decl. ¶ 12; Torgerson Depo. at 44; Jones Decl. ¶ 11; Ex. G, Defs.'

19  Jones Depo. at 30, 31; Brelje Depo. at 56; see *also Coszalter*, 320 F.3d at 977 (retaliatory actor's

20  expressed opposition to protected activity supports inference of retaliatory intent).

21          With no evidence supporting a reasonable inference that defendants intended to

22  retaliate against Samaan for the Sailor Park Suit, Samaan has no possibility of establishing his

23  First Amendment retaliation claim on that ground.

24          2.     Samaan's 2013 Emails

25          Whether Samaan's 2013 emails were a substantial motivating factor in the

26  decision to revoke his CCW permit presents a closer question.  The court assumes for purposes of

27

28  [8] Although Samaan refers to multiple "lawsuits," the parties address only the Sailor Bar Suit.

this motion that the 2013 emails constitute constitutionally protected activity and that revocation

of the CCW permit would chill a person of ordinary firmness from continuing to engage in the

protected activity. *See* Mot. at 12 (arguing only that Samaan cannot establish necessary

retaliatory intent to raise viable First Amendment retaliation claim without addressing other

elements).

The record shows that despite Jones' claim at deposition that he was unaware of

the 2013 emails, *see* Defs.' Jones Depo. at 31, the emails were sent to him one hour and two

minutes before he revoked Samaan's permit. Applying the *Mulligan* factors to this circumstantial

evidence, as explained below, there is sufficient evidence of a substantial causal /////

relationship between Samaan's emails and the adverse action to allow this aspect of Samaan's

case to proceed to trial. *See Mulligan*, 835 F.3d at 988.

a.      Proximity in Time

Construing the evidence in a light most favorable to Samaan, the timing factor

weighs against summary judgment. Seven days after the Sheriff's Department began

investigating Samaan's March 4 email and two hours after Brelje and Jones received Samaan's

2013 Emails, Jones decided to revoke Samaan's CCW permit by responding directly to an email

containing the 2013 emails. *See* Brelje Depo Ex. 1 at 72-73. This temporal proximity does not

prove Jones revoked Samaan's CCW permit in response to receiving Samaan's emails. *See*

*Fannin v. Smith*, No. 4:14-CV-5091-TOR, 2015 WL 1885683, at *7 (E.D. Wash. Apr. 24, 2015)

("Timing is but one factor that must be examined in the totality of the circumstances in evaluating

a motion for summary judgment."). But, at this juncture, the court does not sit as the trier of fact,

and Jones' decision to "[r]evoke it" shortly after receiving Samaan's emails could support an

inference of retaliatory intent.

b.      Expressed Opposition

This factor, which considers whether the alleged retaliator expressed opposition to

the protected activity, also weighs against summary judgment. In forwarding the 2013 Emails to

Jones, Brelje stated that the emails "use[] the "N" word and talk[] about the white establishment

among other threatening language[.]" Brelje Depo Ex. 1at 72. Construing this evidence in a light

most favorable to Samaan, Brelje's statements indicate his distaste for Samaan's expressed dissatisfaction with County officials and characterize Samaan's complaints of discrimination as "threat[s]." *See id.* Moreover, the email exchange between Brelje and Jones could support an inference Jones relied on or shared Brelje's expressed opposition in revoking Samaan's permit. *See id.* at 73 (Brelje stating, "This is the guy on the CCW and parkway issue," and Jones responding "Thanks. Revoke it. Document it all."). While there is no evidence of a threatening phone call promising retribution, *see Gasco*, 874 F.2d at 1315, or emails indicating defendants were dissatisfied with Samaan, *see CarePartners*, 545 F.3d at 877, it is not the court's job to prematurely weigh the evidence in this case. Because Jones' statements could be reasonably construed as expressed opposition to Samaan's emails, this factor weighs against granting Jones' motion.

### c. Evidence the Proffered Explanation is False or Pretextual

The third and final factor likewise weighs against summary judgment, as Jones' proffered explanation for revoking Samaan's permit could reasonably be construed as pretextual. Jones stated under oath that he was "completely" unaware of the emails when he decided to revoke Samaan's CCW permit. Jones Depo. at 31. He further testified, "[t]he only thing that I relied on to ultimately approve the revocation of the CCW was [Samaan's March 4] stated intention to carry [a] weapon in violation of county ordinance." *Id.* At the same time, the evidence shows Jones received and responded to the emails before deciding to revoke Samaan's permit. Brelje Depo Ex. 1at 73; *see also* ECF No. 64 (interrogatory requiring Jones to identify each person who "provided information . . . that assisted in his decision to revoke Plaintiff's Concealed Weapons Permit," and Jones' response, "Brelje communicated by email with Scott Jones on March 15, 2016)." A reasonable trier of fact could discredit Jones' explanation at his deposition, concluding instead that Jones decided to revoke Samaan's CCW permit because of Samaan's emails. The need for a credibility determination precludes summary judgment.

/////

/////

/////

d.    Conclusion

The evidence before the court would permit a reasonable inference that the motive element is satisfied as to the 2013 emails.  Jones is not entitled to summary judgment as to those emails.

3.    Mark Rains' Statement and the County's Threat Investigation

Samaan presents no evidence showing any County official involved in the investigation of Rains' email identifying Samaan as a potential threat was also involved in the decision to revoke his CCW permit.  Instead, Samaan argues that because Landy requested Codog conduct a threat investigation of Samaan two weeks before Samaan's CCW permit was revoked, "a reasonable inference can be made that the Sheriff's Department was therefore aware of and used Mark Rains' statement as part of their *[sic]* decision to revoke Plaintiff's CCW."  Opp'n at 11; *see also id.* at 15 (arguing "it is extremely difficult to believe Defendants' contentions that Defendant Jones, the head of the Sheriff's Department, was not aware of the allegations and investigations that Sacramento County was conducting regarding Plaintiff being a 'threat'").  The inference plaintiff asks the court to draw is not reasonable, and the court is unpersuaded.  *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("[M]ere speculation that defendants acted out of retaliation is not sufficient."); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive. To be cognizable on summary judgment, evidence must be competent.").

Samaan also argues that because the CCW panel received Landy's March 8 email with County personnel discussing Samaan, there is a triable issue as to whether his CCW permit was revoked in retaliation for his protected activity.  Opp'n at 15.  The March 8, 2016 email does not describe Samaan's alleged conduct and thus does not implicate his protected activity.  This argument also amounts to no more than unsupported speculation and is therefore also unavailing.  *See Wood*, 753 F.3d at 905; *Carmen*, 237 F.3d at 1028.  Insofar as Samaan's retaliation claim

/////

17

1   relies on Rains' statement or the County's threat investigation, Jones is entitled to summary

2   judgment.

3                   4.       Samaan's March 4, 2016 Letter

4                   In his unsuccessful motion for summary judgment, Samaan identified as protected

5   activity only his "emails to the County regarding discriminatory and disparate treatment, and

6   filing the [Sailor Bar] lawsuit." ECF No. 27 at 9. Here, in opposing Jones' motion, Samaan

7   argues for the first time that his March 4 email is also entitled to First Amendment protection

8   because he was merely challenging the Ordinance in "an opinion letter" and defendants have

9   "wrongfully equat[ed] Plaintiff's use of a pen in his March 4, 2016 email, with Plaintiff's use of a

10  gun." Opp'n at 7-8. Under this theory, Samaan merely challenged the Ordinance "in order to get

11  standing, . . . just like Rosa Parks and Dr. Martin Luther King" and Jones was precluded from

12  revoking Samaan's CCW permit in response to his act of "civil disobedience." *See id.* at 16.

13  This argument is unclear, and Samaan provides no authority supporting his position.

14                  Samaan's email plainly did not only challenge the validity of the Ordinance; it also

15  specifically stated his intention to carry a weapon in the Parkway in violation of that Ordinance.

16  Samaan Ex. 13 ("I will carry while on my horse in the parkway . . . ."). Even assuming for sake

17  of argument that Jones was prohibited from responding to a CCW permit-holder's expressed plan

18  to carry a weapon in violation of local law, an untenable argument Samaan advances without

19  support, Samaan produces no evidence supporting his contention that defendants revoked his

20  CCW in retaliation for his criticism of the Ordinance rather than his stated intention to use his

21  CCW to violate the ordinance. No juror could reasonably conclude defendants' revocation was

22  substantially motivated by Samaan's expressed opposition to the Ordinance alone, rather than his

23  intention to violate the Ordinance. *Cf. Ballentine v. Las Vegas Metro. Police Dep't*, No.

24  214CV01584APGGWF, 2017 WL 3610609, at *6 (D. Nev. Aug. 21, 2017), *appeal dismissed*,

25  No. 17-16728, 2017 WL 5899849 (9th Cir. Sept. 19, 2017) (granting summary judgment on First

26  Amendment retaliation claim because there was no evidence officers enforced statute banning

27  graffiti "to chill [plaintiffs'] speech. To the contrary, both [officers] encouraged the plaintiffs to

28  continue their protests by other means and were focused on the act of placing chalk on the

                                                18

sidewalks without cleaning it up, not on the content of the messages being written.").  Jones is entitled to summary judgment insofar as Samaan's retaliation claim relies on Samaan's March 4, 2016 letter.

C.      Equal Protection Claim

1.      Class-Based Discrimination

Samaan alleges his "CCW permit was revoked based on his African race, [and] his name . . . ."  FAC ¶¶ 16, 22.  Jones moves for summary judgment, arguing there is no evidence to support Samaan's claim.  Mot. at 14-15.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. Aug. 3, 2018) (internal quotation marks omitted).  To avoid summary judgment on a § 1983 claim of racial discrimination under the Equal Protection Clause, the plaintiff must "produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [the challenged action] was racially motivated." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948-49 (9th Cir. 2003), *overruled on other grounds by Edgerly v. City & Cty. of San Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010).

In opposing defendants' motion for summary judgment on this claim, Samaan argues, without support, that the County's "'longstanding practice' of discrimination and other wrongful treatment are [*sic*] clear based on statistics in Sacramento County for how few minorities are granted CCW's by the County . . . ."  Opp'n at 21; *see id.* ("The statistical data from Sacramento County evidences this historical and purposeful discriminatory practice."). Notably, he cites no source for these statistics nor any evidence to otherwise support his claim. The court does not consider whether such allegations, if supported, would suffice. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) ("[C]onclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment.") (citation omitted).

/////

Samaan also argues the conduct of non-Sheriff's Department County personnel "concerning various properties owned by plaintiff . . . creates triable issues of material fact in this action." Opp'n at 16. This evidence includes officials "placing unethical holds on Plaintiff's construction projects, . . . disparately treating Plaintiff differently than Plaintiff's Caucasian neighbors with regard to their respective property rights, unlawfully placing invalid liens on Plaintiff's real property" and "wrongfully forcing Plaintiff to alter plans and change construction . . . to name a few." *Id.* Samaan does not allege, however, that any of his property disputes with County personnel involved the Sheriff's Department or the individuals involved in revocation of Samaan's CCW permit. Samaan cannot save his equal protection claim, which is based exclusively on the revocation of his CCW permit, by alleging the County discriminated against him concerning real estate assets he owns.

The motion for summary judgment on Samaan's equal protection claim for racial discrimination is GRANTED.

2.    Class of One

Where a plaintiff does not allege membership in a class or group, he may prevail under a "class of one" Equal Protection theory by showing he was "[1] intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted). Rather than alleging the defendant discriminated against a group with whom the plaintiff shares characteristics, a class of one plaintiff alleges the defendant intentionally, and irrationally, treated him differently than others similarly situated. *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Here, too, Samaan cannot sustain his claim. Samaan contends "Jones admit[tted] to disparate treatment of plaintiff . . . Jones testified that he created a new category in order to revoke Plaintiff's CCW because Plaintiff is the first and only person whose CCW was revoked for not breaking the law." Opp'n at 17. In deposing Jones, Samaan noted the bases for Jones's previous CCW permit revocations and asked, "So for me I would have my own category . . .
/////

saying 'prospective law breaker.'"  Samaan Ex. 6, Samaan Jones Depo., ECF No. 58-4 at 33.

Jones responded:

> I think the majority of revocations are based on an arrest. The other broad categories would being subject of a restraining order, being-- having a mental health hold, which would preclude you.  Negative law enforcement contact I guess which I guess loosely yours could fit under.  But, yeah, you would have I guess -- if we were being as particular as we could on these, you would have your own category.

ECF No. 58-4 at 33.  Jones' testimony does not permit a reasonable fact finder to conclude Jones treated Samaan differently than other similarly situated persons.  *See Willowbrook*, 528 U.S. at 564.  In this context, "similarly situated" means that in all relevant respects, the comparators are "alike," *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992), "arguably indistinguishable," *Ross v. Moffitt*, 417 U.S. 600, 609 (1974), or "identical," *Chico Scrap Metal, Inc. v. Raphael*, 830 F. Supp. 2d 966, 975 (E.D. Cal. 2011), *aff'd and remanded on unrelated question sub nom. Chico Scrap Metal, Inc. v. Robinson*, 560 Fed. App'x 650 (9th Cir. 2014).  Samaan has produced no evidence that another CCW permit holder informed the Sheriff's Department of his or her intention to violate a law or ordinance under rights purportedly guaranteed by his CCW permit, and then was treated differently than Samaan.  In fact, Samaan provides no comparator evidence whatsoever, aside from his allegation he is the only person whose CCW permit has been revoked as a "prospective law breaker."  *See* Samaan Jones Depo. at 33.  Thus, Samaan cannot show he was treated differently than others who were similarly situated.  *Cf. Olech*, 528 U.S. at 565 (noting plaintiff's allegation that "the Village intentionally demanded a 33–foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15– foot easement from other similarly situated property owners").  Furthermore, Samaan makes no attempt to show defendants lacked a legitimate reason to make the distinction it did.

*Willowbrook*, 528 U.S. at 564; *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1023 (9th Cir. 2011); *see* Reply at 3 (arguing "the Sheriff has an important and substantial interest in public safety and preventing crime").

       Jones' motion for summary judgment on Samaan's equal protection claim is GRANTED.

D.      Due Process Clause Claim

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) the lack of adequate process. *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008).

Samaan did not allege a due process claim and, as the court has noted, he previously disclaimed any reliance on such a claim. *See* MSJ Order at 3. Moreover, he does not address defendants' argument that he cannot sustain a due process claim here because he has no constitutionally protected liberty or property interest in his CCW permit. Samaan has therefore abandoned any such claim, which, regardless, would not succeed on the merits in light of *Erdelyi v. O'Brien*, 680 F.2d 61, 64 (9th Cir. 1982) (plaintiff did not "have a property or liberty interest in a concealed weapons license"); *Peruta v. Cty. of San Diego*, 824 F.3d 919, 942 (9th Cir. 2016), *cert. denied sub nom. Peruta v. California*, 137 S. Ct. 1995 (2017).

Jones' motion for summary judgment on this claim is GRANTED.

IV.     CONCLUSION

As explained above, the County's motion for summary judgment is GRANTED; Jones' motion for summary judgment is GRANTED as to all claims other than Samaan's First Amendment retaliation claim arising out of the 2013 Emails.

The court SETS the final pretrial conference for November 16, 2018 at 10:00 A.M. in Courtroom 3 with the filing of a joint pretrial statement due October 26, 2018.

IT IS SO ORDERED.

DATED: October 9, 2018.

UNITED STATES DISTRICT JUDGE